NOTICE

Decision filed 06/20/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241210-U

NO. 5-24-1210

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| RAMONA L. SIMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | |
| | ) | No. 24-SC-1782 |
| WILLIAM ROWLAND, LANDON KREKE, | ) | |
| ANDREW WARD, FAIRVIEW HEIGHTS POLICE | ) | |
| DEPARTMENT, and WALTER'S AUTO BODY, | ) | Honorable |
| | ) | Julia R. Gomric, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in entering judgment in favor of three police officers, their police department, and a towing company in a case involving allegations that they improperly towed her vehicle and refused to release it where the undisputed evidence showed that there was no valid proof of insurance or registration for the vehicle. We therefore affirm the court's judgment.

¶ 2    At issue in this appeal is the towing and impoundment of an uninsured and unregistered vehicle during a traffic stop. The vehicle was last registered to a business operated by the plaintiff, Ramona L. Sims. Her daughter was stopped by a Fairview Heights police officer while driving the vehicle and charged with multiple misdemeanors. Police ordered the vehicle towed in accordance with provisions of the Illinois Vehicle Code. During the course of the stop, police seized as evidence a license plate purporting to be issued by the United States Department of Transportation

1

(US DOT plate). The plaintiff filed the instant *pro se* small claims complaint, alleging that the actions of the officers violated a litany of statutory and constitutional provisions. After a bench trial, the trial court found that the plaintiff failed to sustain her burden of proving her claims. The plaintiff, acting *pro se*, appeals that ruling, arguing that it was against the manifest weight of the evidence. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4      On May 4, 2024, the plaintiff's daughter, Jariah Wood, was driving the vehicle at issue in this appeal, a blue Nissan Maxima, when she was stopped by Fairview Heights police officer William Rowland, one of the defendants in this case. Officer Rowland stopped the vehicle based on suspicion that the vehicle's registration was not valid and the window tinting was darker than allowed by law. During the stop, Wood did not provide a valid driver's license or proof that the vehicle was properly registered or insured. In response to Wood's demand to speak to Rowland's supervisor, Officers Landon Kreke and Andrew Ward were called to the scene. As a result of these interactions, police arrested Wood and charged her with multiple misdemeanors. Officer Rowland called Walter's Auto Body to tow the vehicle.

¶ 5      Before the vehicle was towed, the plaintiff's mother, Charlene Lewis, arrived at the scene. She told officers that she was the trustee of a trust that owned the vehicle and requested possession of the vehicle and its contents. However, she did not provide proof that the vehicle was insured. The officers did not allow Lewis to take possession of the vehicle, but they did allow her to remove several items of personal property that were inside it.

¶ 6      On July 31, 2024, the plaintiff filed a *pro se* small claims complaint naming as defendants Officers Rowland, Kreke, and Ward, the Fairview Heights Police Department, and Walter's Auto Body. She alleged that Officer Rowland initiated the traffic stop "while the [v]ehicle was being

2

used for RAMONA L. SIMS TRUST business" and that the defendants "illegally" removed valid license plates from the vehicle. She asserted that Officers Rowland and Ward removed and altered the US DOT plate "with the intent to defraud" and that the defendants did not give possession of the "trust vehicle" to trustee Charlene Lewis when she arrived at the scene. The plaintiff further alleged that the defendants refused to return the vehicle upon request. She alleged that she had filed multiple complaints with the internal affairs section of the Fairview Heights Police Department and various other agencies but received no response. Finally, she alleged that Walter's Auto Body imposed storage and towing charges "without proper legal basis."

¶ 7      The plaintiff asserted that the defendants' actions violated her rights to due process under both the United States and Illinois Constitutions and several Illinois statutes. However, she provided no argument to support these conclusory claims, and many of the statutes she cited were clearly irrelevant. For example, she cited section 1-111.4 of the Illinois Vehicle Code, which provides a definition for the term "commerce" (625 ILCS 5/1-111.4 (West 2024)); section 1 of the Consumer Fraud and Deceptive Business Practices Act, which provides statutory definitions for various terms under that act (815 ILCS 505/1 (West 2024)); and provisions of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 2024)). In her prayer for relief, the plaintiff requested (1) an order directing the defendants to return the vehicle immediately, (2) damages of $10,000 for her lost use of the vehicle, and (3) reasonable attorney fees and court costs.

¶ 8      Attached to the complaint was a document titled "Affidavit of Truth," signed by Charlene Lewis. In it, Lewis averred that she was a trustee of the Ramona Lanea Sims Trust and was authorized to act on behalf of the trust. She further averred that when she arrived at the scene of the traffic stop and requested access to the vehicle, officers allowed her to retrieve personal

3

property from the vehicle (including a purse, a cell phone, and some food), but they did not give her access to the vehicle itself or to other items of personal property, including a laptop in the back seat.

¶ 9 The matter proceeded to a bench trial on October 2, 2024. The plaintiff appeared *pro se*, as did the owner of Walter's Auto Body, Terry Bullard. Attorney Charles Pierce appeared on behalf of the Fairview Heights Police Department and the three officers. We note that although Bullard appeared, he did not present his own evidence or cross-examine any of the witnesses called by the plaintiff or the other defendants.

¶ 10 The plaintiff testified that the vehicle at issue was owned by the Ramona Lanea Sims Trust and that Lewis was the "second trustee" of that trust. She further testified that on May 4, 2024, her daughter was driving the vehicle when Officer Rowland pulled her over "for window tinting." She stated that Lewis arrived at the scene before the vehicle was towed and that Lewis was "denied the trust property." The plaintiff then stated that the vehicle "was transferred to Walter's Towing without [the plaintiff's] consent and also the consent of the trustee." She acknowledged that she was not present at the scene and that her testimony was based upon what she had been told.

¶ 11 The plaintiff next testified that she sent documents to the internal affairs division at the Fairview Heights Police Department, and she sent a request for the return of the vehicle to the chief of police; however, she received no response. She indicated that during a phone call, an employee of Walter's Auto Body told her the vehicle had been sold. However, she further testified as follows: "[W]hen I sent him documents stating that—you know requesting the car and a true bill, he sent back something saying that he held the car since June 30 of 2023[1] but the car was

---

[1]A copy of a June 6, 2024, letter addressed to Madison's Garden was attached to the plaintiff's complaint as an exhibit. It stated that the vehicle had been "abandoned" at Walter's Auto Body's facility since June 30, 2023; that storage fees were accruing at a rate of $50 per day; and that a representative of Madison's Garden must pay the bill and remove the vehicle within 10 days or it would be subject to

impounded on 5/4 of 2024." She testified that she was informed she would have to pay $2,200, representing a fee of "50 dollars a day, I guess."

¶ 12    On cross-examination, attorney Pierce asked the plaintiff, "At the time of this, the car did not have a valid lawful registration with the State of Illinois, did it?" She replied, "It did." At this point, Pierce offered into evidence a photograph of the US DOT plate taken from the vehicle during the stop. The plaintiff acknowledged that the US DOT plate was the "license plate" on the vehicle that day. Pierce asked whether it was "a lawful plate issued by any proper agency in the United States," to which the plaintiff replied, "It is." When asked which agency issued it, she stated, "The DOT number, federal motor carrier."

¶ 13    The plaintiff testified that the last registration for the vehicle had been in the name of Madison's Garden, LLC, a company she owned. She acknowledged that the registration expired at the end of March 2023. When asked if she had any documentation to prove the vehicle was transferred from Madison's Garden to the Ramona Lanea Sims Trust, she explained that she had documentation showing that the company itself was transferred into the trust.

¶ 14    The plaintiff admitted that neither the trust nor Madison's Garden maintained insurance for the vehicle. She further admitted that the trust had not registered the vehicle with the Illinois Secretary of State's Office. She testified, however, that there was "a UCC [(Uniform Commercial Code)] filing for that." When asked by the court to clarify this testimony, the plaintiff responded, "[H]e [(Pierce)] said was it registered so I gave him the UCC filing stating that it was registered with the state." The following exchange then took place:

---

disposal. We note that in spite of this mistake, it does not appear that Walter's Auto Body attempted to charge the plaintiff for storage dating back to June 2023. She testified that she was quoted a charge of $2,200. At a rate of $50 per day, this total represented storage fees for a period of 44 days, not a period of a year.

5

"Q. (By Mr. Pierce) You produced a UCC financing statement showing that a Nissan Mazda was listed as collateral on a debt, this is not a registration with the Illinois Department, excuse me, Illinois Secretary of State's Office, is it, correct?

A. That's my registration. That's how I prefer to register it."

She went on to state that because the vehicle was private property, it was "not required to be registered by way of the D.M.V."

¶ 15    The plaintiff's next witness was Lewis. On direct examination, she testified that she was "denied the vehicle" when she arrived at the scene and that officers did not tell her the reason. On cross-examination, Lewis admitted that she did not provide proof of insurance or proof that she had an ownership interest in or right to possession of the vehicle. She stated, however, that officers did not ask for such proof.

¶ 16    Finally, Jariah Wood testified for the plaintiff. On direct examination, Wood testified that she was arrested after the traffic stop and that she was questioned at the police station but was not given *Miranda* warnings. See *Miranda v. Arizona*, 384 U.S. 436 (1966). On cross-examination, Wood acknowledged that when she was stopped, she did not have a valid Illinois driver's license or a valid driver's license issued by any other state. She testified, "I wasn't required to have one." Wood admitted that when asked to show her driver's license, she instead showed her passport card. She further admitted that she also did not provide proof of insurance when asked to do so. When asked to confirm that she was arrested and "charged with several offenses" that were still pending, Wood replied, "I was arrested but not charged."

¶ 17    Officer Rowland was the sole witness for the defendants. He testified that he stopped the vehicle for two reasons: first, the registration attached to the vehicle did not appear to be a valid registration; and second, the window tinting appeared to be darker than what is allowed under the

6

Illinois Vehicle Code. Pierce showed Officer Rowland the US DOT plate removed from the vehicle and asked whether he recognized it as a valid registration. Officer Rowland replied, "No." He testified that he asked dispatch to run the number on the US DOT plate, and the dispatcher informed him that there was no record of that number. He further testified that the driver did not provide her driver's license or proof of insurance when asked to do so. He noted that she did not even tell him whether she had a valid driver's license.

¶ 18    Officer Rowland explained that he called additional officers to the scene because Wood asked to see his supervisor. He testified that he directed the towing of the vehicle after arresting Wood because impounding a vehicle is mandatory "for arrests in circumstances like this one." He explained that a vehicle can be released with proof of insurance. He testified, however, that no one supplied proof of insurance at the scene of the traffic stop. Officer Rowland further testified that the towing company cannot release an impounded vehicle until the police department issues a tow release. He noted that, to his knowledge, no one had provided proof of insurance after the vehicle was towed.

¶ 19    On cross-examination, the plaintiff asked Officer Rowland to explain the Fairview Heights Police Department's procedures for towing and impounding a vehicle. In response, he testified, "If a traffic stop results in the arrest of the driver for having no license and the vehicle does not have liability insurance, then the vehicle should be towed, shall be towed according to the state statute." He explained that the vehicle can be released to the registered owner rather than being towed if the owner was not involved in the arrest and provides proof of valid insurance.

¶ 20    The plaintiff then asked Officer Rowland if "any impoundment or hearing" notice was sent to the registered owner. He replied, "I don't believe there was a notice of impoundment given to Ms. Wood. The tow report was provided to Ms. Wood which provides on the back of it instructions

7

for how to get the vehicle released from the police department." The plaintiff clarified that she was asking about the notice that must be sent to the registered owner of a vehicle within 10 days after it is towed.[2] When asked whether such notice had been sent to her, Officer Rowland noted that sending notices was not something he handled.

¶ 21    Finally, the plaintiff asked Officer Rowland what authority he had for removing the "license plates" from the vehicle. He explained that the US DOT plate was collected as evidence. He noted that, although he could not cite a specific regulation or statute, this was a common practice.

¶ 22    On redirect examination, Officer Rowland reiterated that information regarding how to request a hearing or obtain the release of an impounded vehicle was printed on the back of the tow report given to Wood at the scene. He further testified that because the registration had expired, there was no registered owner to whom police could mail a notice of impoundment.

¶ 23    After the parties presented closing arguments, the court took the matter under advisement. Later that day, the court entered a written order finding that the plaintiff had "failed to sustain her burden of proof" and entering judgment in favor of all defendants. This appeal followed. We note that, although the plaintiff's appeal was not timely, this court granted her motion for leave to file a late appeal based upon her allegation that she did not receive notice of the court's judgment until more than 30 days after it was entered.

¶ 24                              II. ANALYSIS

¶ 25    On appeal, the plaintiff argues that (1) the court's finding that she failed to sustain her burden of proof as to all defendants was against the manifest weight of the evidence, and (2) the

---

[2]We note that the Illinois Vehicle Code contains various requirements for notice to owners and lien holders of vehicles towed under its provisions; however, it is not clear which specific provision the plaintiff was referring to here.

8

court erred in finding in favor of Rowland because he admitted to having the vehicle towed and removing the US DOT plate. Although the plaintiff frames these contentions as separate issues, since they are factually and legally intertwined, we will consider them together.

¶ 26    In an appeal from a judgment after a bench trial, we determine whether the decision was against the manifest weight of the evidence. We will not substitute our judgment for that of the trial judge. Rather, we will reverse only if the opposite conclusion from the one reached by the trial court is clearly evident. *In re Estate of Jackson*, 2022 IL App (1st) 211132, ¶ 16.

¶ 27    The plaintiff recognizes that the manifest weight of the evidence is the appropriate standard of review. However, she urges us not to give deference to the trial court's findings, at least with respect to its finding in favor of Walter's Auto Body. She contends that there are "questions of law relating to whether the trial court's order sufficiently explains its ruling because it does not address why it entered judgment in favor of Appellee Walter's Auto Body owner Terry Bullard, who never refuted the claims via 'any evidence' other than his Answer to the Complaint." The plaintiff correctly notes that questions of law are subject to *de novo* review. See *Zebra Technologies Corp. v. Topinka*, 344 Ill. App. 3d 474, 480 (2003). However, she fails to identify which questions of law to which she refers.

¶ 28    Moreover, the record is clear that Walter's Auto Body and its employees were acting solely at the direction of law enforcement officers because the company was on the Fairview Heights Police Department's tow rotation list. See 625 ILCS 5/4-203.5 (West 2024). The plaintiff did not allege, much less prove, that Bullard or any of his employees acted negligently or did anything other than tow and store the vehicle at the direction of Fairview Heights officers. Thus, there is no basis for a finding against Walter's Auto Body.

¶ 29    The plaintiff next contends that the court's findings in favor of all defendants were against the manifest weight of the evidence because the court "ignored" evidence that the officers failed to abide by the requirements of section 4-203(f)(3) of the Illinois Vehicle Code when they refused to release the vehicle to Lewis without proof of insurance. See *id.* § 4-203(f)(3). We disagree.

¶ 30    The plaintiff correctly notes that the statutory provision she cites mandates that "[i]f the registered owner or legally authorized person entitled to possession of the vehicle shall arrive at the scene prior to actual removal or towing of the vehicle, the vehicle shall be disconnected from the tow truck and that person shall be allowed to remove the vehicle without interference." *Id.* She argues that the statute does not "state that the vehicle will not be released if the person who comes to get the vehicle [does not have] insurance and/or that the vehicle will not be released if the plates are valid US DOT plates." The provision the plaintiff cites is not applicable to these facts.

¶ 31    Section 4-203(f) authorizes owners and lessors of private property to have vehicles towed if those vehicles are left abandoned or unattended on the property without permission. *Id.* § 4-203(f). It likewise authorizes law enforcement officers to have vehicles towed if they are left abandoned or unattended on public property without permission. *Id.* Section 4-203(f)(3) applies to the release of vehicles towed pursuant to this provision. Vehicles towed pursuant to other provisions may be released under the specific conditions prescribed for vehicles towed pursuant to those provisions. See, *e.g.*, *id.* § 4-203(e)(1), (2) (setting forth conditions for the release of vehicles impounded after an arrest for driving under the influence).

¶ 32    The applicable provision in this case is section 6-101(d), which provides that any person driving without a driver's license and without mandatory insurance "*shall* have his or her motor vehicle immediately impounded by the arresting law enforcement officer." (Emphasis added.) *Id.* § 6-101(d). The statute further provides that a vehicle impounded pursuant to this provision may

be released to "any licensed driver *upon a showing of proof of insurance for the motor vehicle*." (Emphasis added.) *Id.* Here, it is undisputed that Lewis did not provide proof of insurance for the vehicle. Therefore, there was no basis for the court to find that the defendants failed to follow the applicable procedures for the release of the vehicle or otherwise acted improperly in directing that it be towed.

¶ 33    The plaintiff further contends that the court erred in finding in favor of Officer Rowland when he "admitted" to removing the US DOT plate from the vehicle. She appears to acknowledge that section 2-111 of the Vehicle Code authorizes law enforcement officers to take possession of any fictitious or expired registration plate or sticker. See *id.* § 2-111. She argues, however, that the statute does not provide authority for the seizure of the US DOT plate at issue here because federal law preempts state law under the supremacy clause of the United States Constitution. See U.S. Const., art. VI, cl. 2; see also *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14 (explaining the circumstances under which federal preemption occurs). We reject this contention for two reasons.

¶ 34    First, although the plaintiff repeatedly refers to the US DOT plate as "valid," the record establishes that it was not. As stated earlier, Officer Rowland testified that when he asked dispatch to run the number with federal authorities, he learned that there was no record of the number. In addition, a photograph of the plate was entered into evidence. The letters "RLS" appear in the upper left-hand corner of the plate with the words "family trust" imposed over them. As the defendants note in their brief, this appears to reference the Ramona Lanea Sims Trust. The fact that this personalized logo is printed directly on the plate suggests that it was not issued by a federal agency, which lends additional credence to Officer Rowland's testimony.

11

¶ 35 Second, there is no indication that the legislation governing the issuance of US DOT numbers was intended to preempt state traffic safety regulations. The requirement for employers and individuals operating commercial vehicles in interstate commerce to register and apply for a US DOT number appears in a subchapter of federal statutes governing safety regulations for commercial motor vehicles. See 49 U.S.C. § 31134 (2024). There is no indication that a US DOT number is intended as a substitute for a valid state-issued vehicle registration. Moreover, another statute in the same subchapter provides that nothing in that subchapter authorizes the federal Department of Transportation to preempt state traffic regulations. *Id.* § 31147. Officer Rowland's seizure of the US DOT plate was clearly authorized under section 2-111 of the Vehicle Code, and federal preemption does not apply here.

¶ 36 Finally, the plaintiff argues that the defendants' refusal to release the vehicle and the "illegal removal of [the] valid US DOT Plate Number" constituted a "taking" without due process because the defendants did not provide her with compensation, notice, or a hearing. In support, she cites provisions of the Illinois Drug Asset Forfeiture Act and *Culley v. Marshall*, 601 U.S. 377 (2024), a case dealing with the due process requirements for civil forfeiture of a vehicle used to commit a drug offense. *Id.* at 380-81, neither of which apply to this case. The plaintiff's final argument is meritless.

¶ 37                                         III. CONCLUSION

¶ 38 For the foregoing reasons, we affirm the judgment of the trial court.

¶ 39 Affirmed.